UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JESSICA MACKEY | CIVIL ACTION |
| VERSUS | NO. 20-1350 |
| AMERICAN MULTI-CINEMA, INC. and ABC INSURANCE COMPANY | SECTION M (2) |

## ORDER & REASONS

Before the Court is a motion for summary judgment filed by defendant American Multi-Cinema, Inc. ("AMC").[1] Plaintiff Jessica Mackey responds in opposition,[2] and AMC replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court grants AMC's motion and dismisses Mackey's claims with prejudice, holding that the condition of the sidewalk was not unreasonably dangerous as a matter of law.

## I.   BACKGROUND

This case concerns a trip-and-fall accident. On May 4, 2019, Mackey was walking on the sidewalk in front of AMC's Westbank Palace 16 movie theater complex in Harvey, Louisiana, when "the tip of her foot was caught on an uneven, raised sidewalk joint, causing her to trip and fall forward to the pavement and sustain serious personal injuries."[4] According to Mackey, the sidewalk had a deviation in height of $\frac{3}{4}$ to $\frac{7}{8}$ of an inch.[5] Mackey alleges that, although AMC did not own the property, it was responsible for maintaining and repairing the sidewalk.[6] Mackey filed this action against AMC alleging that AMC's negligence in failing to properly inspect, maintain,

---

[1] R. Doc. 16.
[2] R. Doc. 31.
[3] R. Doc. 37.
[4] R. Doc. 1 at 2-3.
[5] R. Doc. 16-3 at 7-8.
[6] R. Doc. 1 at 2-3.

and repair the sidewalk, and to warn patrons of the alleged defective condition, caused her accident and resultant damages.[7]

## II.   PENDING MOTION

AMC argues that it is entitled to summary judgment because, as a matter of Louisiana law, the sidewalk did not present an unreasonable risk of harm.[8] Citing numerous cases, AMC argues that Louisiana courts have consistently held that height deviations in sidewalks larger than the one Mackey claims existed at AMC's property do not constitute an unreasonable risk of harm.[9] Thus, AMC contends that Mackey cannot sustain her burden of proof, and it is entitled to summary judgment dismissing her claims.[10]

In opposition, Mackey argues that there are disputed issues of material fact regarding whether the deviation in the sidewalk height constitutes an unreasonable risk of harm.[11] She argues that the deviation was not open and obvious because the sidewalk was dirty and it was raining at the time of the accident.[12] According to Mackey, the jury should determine whether the deviation was open and obvious, and ultimately, whether it created an unreasonable risk of harm.[13] Further, Mackey attempts to distinguish the jurisprudence upon which AMC relies by pointing out that some of the cases involved parking lots rather than sidewalks.[14] She also points out that some of the cases involved public entities as defendants and suggests that a private company like AMC should be held to a higher standard with respect to the condition of its sidewalks.[15]

---

[7] *Id.* at 3-4.
[8] R. Doc. 16-7 at 5-11.
[9] *Id.* at 9-10.
[10] *Id.* at 11-12.
[11] R. Doc. 31.
[12] *Id.* at 1-2.
[13] *Id.* at 6.
[14] *Id.* at 6-14.
[15] *Id.*

### III. LAW & ANALYSIS

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment

motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment.  *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).  Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial.  *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2).  Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

**B. Premises Liability**

Under Louisiana law, "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition." La. R.S. 9:2800.6(A).  "This duty includes a reasonable effort to keep the premises free of any

4

hazardous conditions which reasonably might give rise to damage." *Id.* To prove a negligence claim against a merchant in a trip-and-fall case, the plaintiff must prove all the following:

> (1) The condition [existing in or on a merchant's premises alleged to have caused the fall] presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. …

La. R.S. 9:2800.6(B); *Davis v. Wal-Mart Stores, Inc.*, 774 So. 2d 84, 90 (La. 2000) (citing *Smith v. Toys "R" Us, Inc.*, 754 So. 2d 209 (La. 1999)). "Failure to prove any one element negates a plaintiff's negligence action." *Martin v. Boyd Racing, L.L.C.*, 681 F. App'x 409, 411 (5th Cir. 2017).

Louisiana courts apply a risk-utility balancing test to determine whether a condition presented an unreasonable risk of harm. *Id.* The four factors are: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature." *Bufkin v. Felipe's La., L.L.C.*, 171 So. 3d 851, 856 (La. 2013).

The Louisiana supreme court has "described the question of whether a defect presents an unreasonable risk of harm as 'a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts.'" *Broussard v. State ex rel. Office of State Bldgs.*, 113 So. 3d 175, 183 (La. 2013) (quoting *Reed v. Wal-Mart Stores, Inc.*, 708 So. 2d 362, 364 (La. 1998)). Thus, generally, "[a]s a mixed question of law and fact, it is the fact-finder's role – either the jury or the court in a bench trial – to determine whether a defect is unreasonably dangerous." *Id.* However, the Louisiana supreme court also recognizes that a trial court retains the "'obligation

to decide which risks are unreasonable based on the facts and circumstances of each case'" and "'to decide if there [is] a genuine issue of material fact as to whether the condition created an unreasonable risk of harm.'" *Martin*, 681 F. App'x at 412 (quoting *Broussard*, 113 So. 3d at 183 n.5) (alteration omitted). Thus, a district court "*can* decide [on a motion for summary judgment] that a condition does not present an unreasonable risk of harm, as a matter of law." *Id.* (emphasis in original). And, indeed, "in the summary judgment context, Louisiana courts have not hesitated to grant summary judgment in favor of defendants in cases in which the nature of the condition is undisputed, and plaintiff has provided no evidence of any unusual feature of the condition suggesting that it is unreasonably dangerous." *Leonard v. Sam's West, Inc.*, 2013 WL 121761, at *3 (E.D. La. Jan. 9, 2013) (collecting cases).

Louisiana law does not require perfectly smooth paved surfaces. As the *Reed* court explained:

> It is common for the surfaces of streets, sidewalks, and parking lots to be irregular. It is not the duty of the party having garde of the same to eliminate all variations in elevations existing along the countless cracks, seams, joints, and curbs. These surfaces are not required to be smooth and lacking in deviations, and indeed, such a requirement would be impossible to meet. Rather, a party may only be held liable for these defects which present an unreasonable risk of harm.

*Reed*, 708 So. 2d at 363. In determining whether a defect in a paved surface constitutes an unreasonable risk of harm, courts consider the size of the variation, its location, and its accident history, along with the gravity and risk of harm measured against the cost and feasibility of repair, the surface's social utility, and individual and societal rights and obligations. *Id.* at 363-65. The Louisiana supreme court has recognized that the utility of paved parking lots and sidewalks is clearly apparent and the cost of maintaining a surface free from all defects is "cost prohibitive." *Leonard*, 2013 WL 121761, at *3 (citing *Reed*, 708 So. 2d at 365-67, *Boyle v. Bd. of Supervisors, La. State Univ.*, 685 So. 2d 1080, 1083-84 (La. 1997), and *White v. City of Alexandria*, 43 So. 2d

618, 620 (La. 1949)). More particularly, pavement expansion joints have a recognized social utility because they are "necessary for safety and for maintenance of larger paved surfaces … allow[ing] for the concrete to expand and contract as it heats and cools due to weather," and without them, the concrete would crack, split, shift, and buckle "which would produce far more hazardous deviations" and increase maintenance costs. *Reed*, 708 So. 2d at 366.

It is undisputed that Mackey tripped over a pavement expansion joint having a height deviation of ¾ to ⅞ of an inch from one section of pavement to the other. Courts in Louisiana have repeatedly held that pavement height deviations of up to two inches do not pose an unreasonable risk of harm, regardless of whether the owner was a public or private entity. *Buchanan v. Wal-Mart Stores, Inc.*, 834 F. App'x 58, 62 (5th Cir. 2020) (holding that a height variance of 1½ to 2 inches was not unreasonably dangerous) (collecting cases); *Chambers v. Vill. of Moreauville*, 85 So. 3d 593, 598 (La. 2012) ("Louisiana jurisprudence has consistently held that a one-and-one-half inch deviation does not generally present an unreasonable risk of harm."); *Reed*, 708 So. 2d at 365-66 (holding that a height variance of ¼ to ½ of an inch did not pose an unreasonable risk of harm); *Boyle*, 685 So. 2d at 1082-84 (holding that a height variance of ½ to 1 inch in sidewalk joints was not an unreasonably dangerous defect); *White*, 43 So. 2d at 619-20 (holding that a height variance of ½ to 2 inches on a sidewalk did not present unforeseeable risk of harm). Thus, the deviation of which Mackey complains is well within the 1½ to 2 inches that Louisiana courts have found do not present an unreasonable risk of harm. The location of the deviation, right in front of the theater, is a highly trafficked area with no history of similar trip-and-fall accidents, which suggests that the likelihood and magnitude of potential harm were low. *Leonard*, 2013 WL 121761, at *3 (citing *Llorence v. Broadmoor Shopping Ctr., Inc.*, 76 So. 3d 134, 137 (La. App. 2001) (noting that "there had been no claims, complaints, or suits arising out of the area either

before or since the plaintiff's claim" when holding that an area was not unreasonably dangerous on summary judgment)). Further, although the cost of repair of the deviation at issue might be minimal, a merchant cannot possibly guess over which expansion joint a patron might fall and "the 'cost to eliminate all such minor defects is staggering.'" *Id.* at *4 (quoting *Reed*, 708 So. 2d at 366). "Finally, as Louisiana courts have repeatedly affirmed, a paved parking lot has social utility and is not dangerous by nature." *Id.*

Applying this law to the undisputed facts of this case, Mackey's evidence concerning the height deviation over which she fell is not sufficient to create a genuine issue of material fact about whether the pavement expansion joint was unreasonably dangerous. Mackey insists that such a dispute exists here because, she says, AMC does not argue that "the uneven concrete where [she] tripped and fell was open and obvious."[16] And she claims that the height deviation in the expansion joint was not open and obvious due to rain and dirt.[17] Even if true, it is immaterial because she does not claim that her view of the expansion joint itself was obscured by the light drizzle or non-pressure-washed condition of the sidewalk at the time of the accident.[18] After all, Louisiana courts recognize that sidewalk expansion joints will have limits of unevenness the law tolerates as a reasonable risk of harm, whether or not the deviation is observed by passersby. Mackey's complaint focuses on the deviation in height of the expansion joint as the cause of her fall,[19] and the great weight of Louisiana jurisprudence holds that the deviation at issue here does not present an unreasonable risk of harm under the four prongs of the risk-utility test. Because the Court finds that Mackey has not met her burden on summary judgment to demonstrate that the alleged defect

---

[16] R. Doc. 31 at 11.

[17] *Id.* ("the uneven concrete [was] obscured by wet pavement and the cleanliness condition of the sidewalk").

[18] As with most all sidewalks, the expansion joint here was plainly observable by pedestrians (especially one like Mackey who testified that she was "[l]ooking at the ground, being careful"). R. Doc. 31-1 at 13.

[19] R. Doc. 1 at 2-3 ("the tip of her foot was caught on the uneven, raised sidewalk joist, causing her to trip and fall forward").

was unreasonably dangerous – one of the three essential elements of her premises-liability claim – the Court need not address the other elements.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that AMC's motion for summary judgment (R. Doc. 16) is GRANTED, and Mackey's claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 7th day of October, 2021.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE